**RECORD NO. 13-2512**

In The

# United States Court Of Appeals
## For The Fourth Circuit

**NOORALI SAM SAVANI, individually and on behalf of others similarly situated;
ROBERT P. TAYLOR, JR., individually and on behalf of others similarly situated,**
*Plaintiffs – Appellees,*

v.

**URS PROFESSIONAL SOLUTIONS, LLC, f/k/a Westinghouse Safety Management
Solutions, LLC, f/k/a Washington Safety Management Solutions, LLC;
URS PROFESSIONAL SOLUTIONS PENSION PLAN, f/k/a Washington Safety
Management Solutions, LLC Pension Plan, f/k/a WSMS Pension Plan;
URS ENERGY & CONSTRUCTION, INC., f/k/a Washington Group International,
Inc.; ROGER ALLEN, as Trustee and Member of the Benefits now Administrative
Committee of URS Professional Solutions Pension Plan;
JULIE TSCHIDA BROWN, as Trustee and Member of the Benefits now Administrative
Committee of URS Professional Solutions Pension Plan;
DAVE HOLLAN, as Trustee and Member of the Benefits now Administrative
Committee of URS Professional Solutions Pension Plan;
DELOYD CAZIER, as Trustee and Member of the Benefits now Administrative
Committee of URS Professional Solutions Pension Plan**
*Defendants– Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT AIKEN**

————————————

**BRIEF OF APPELLEES**

————————————

**Stanley G. Jackson**
**JACKSON LAW OFFICE**
**321 ½ Newberry Street, SW**
**Aiken, South Carolina  29801**
**(803) 643-1003**

*Counsel for Appellees*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____       Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                          YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                         YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?          YES     NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     YES     NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                          YES     NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************
I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____          _____
        (signature)                              (date)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          A.    The WSMS Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          B.    2004 Deletion of § 4.12(a) by the Committee of the Plan . . . . 7

          C.    2005 Deletion of § 4.12(a) by the Board of Directors of the
               Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          D.    2006 Termination of Benefits . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.    COURSE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          A.    Savani Alleged That Both the 2004 Amendment and the
               2005 Freeze Amendment Violated ERISA's Anti-cutback
               Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          B.    Savani Alleged That Exhausting of Administrative
               Remedies Would Be Futile - Which was Proven to be
               Correct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          C.    The Fourth Circuit Held That WSMS Could Not Eliminate
               Accrued Early-retirement Benefits . . . . . . . . . . . . . . . . . . . . . 9

i

D.   The 2005 Amendment Not Only Froze Benefits, it Eliminated Supplemental Early-retirement Benefits and Allowed Plan Beneficiaries to Continue to Earn Eligibility . 10

III.   DECISION OF DISTRICT COURT . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT AND CITATIONS OF AUTHORITY . . . . . . . . . . . . . . . . . . . . 16

I.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.   WHILE THE A FREEZE AMENDMENT IS PERMISSIBLE, IT CANNOT ELIMINATE EARLY RETIREMENT SUPPLEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

A.   The ERISA's Anti-Cutback Rule Protects Accrued and/or Early Retirement Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B.   The 2005 Freeze Amendment Violated ERISA's Anti-cutback Rule, as did the 2004 Amendment . . . . . . . . . 27

1.   This Case is Distinguishable from *Cinotto* . . . . . . . . 28

2.   The 2005 Freeze Amendment Violated ERISA's Anti-cutback Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IV.   THE CASES STATING THAT THE PLAINTIFF AND SUBCLASS CAN "GROW INTO" THE $700 EARLY RETIREMENT SUPPLEMENT ARE DIRECTLY ON POINT AND CONTROLLING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

V.   § 10.01 OF THE PLAN PROHIBITS THE BOARD FROM ELIMINATING THE § 4.12 (a) SUPPLEMENT . . . . . . . . . . . . . 36

VI.   THE DISTRICT COURT PROPERLY ADOPTED THIS COURT'S DECISION - TERMINATING EARLY RETIREMENT BENEFITS VIOLATES THE ANTI-CUT BACK RULE - 29 U.S.C. § 1054(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

VII.  THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION WHEN IT DECLINED TO REMAND THE FREEZE ISSUE TO THE COMMITTEE . . . . . . . . . . . . . . . . . . . 40

       A.   The District Court Decision . . . . . . . . . . . . . . . . . . . . . . . . . . 41

       B.   Failure to Remand is not Error . . . . . . . . . . . . . . . . . . . . . . . . 42

       C.   The Supreme Court's Decisions are Irrelevant Because Any Other "interpretation" by the Plan Administrator Would Violate ERISA's Anti-cutback Rule and Would Hinder Efficiency, Predictability and Uniformity . . . . . . . . . 44

       D.   Remand is NOT Appropriate - the Plan Administrator Has Had Occasion To Interpret the Freeze Amendment . . . . . . . . 45

       E.   Remand Would Be Futile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

       F.   URS Waived Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

VIII. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY NOT REQUIRING TAYLOR TO EXHAUST HIS ADMINISTRATIVE REMEDIES . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

IX.   ALTERNATIVE EQUITABLE RELIEF . . . . . . . . . . . . . . . . . . . . . . 49

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

*Abels v. Titan Intern., Inc.*,
    85 F. Supp. 2d 924 (S.D. Iowa 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ahng v. Allsteel, Inc.*,
    96 F.3d 1033 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34, 35

*Aldridge v. Lily-Tulip, Inc., Salary Retirement Plan Benefits Comm.*,
    953 F.2d 587 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Anweiler v. American Elec. Power Serv. Corp.*,
    3 F.3d 986 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Arena v. ABB Power T & D Company Inc.*,
    2003 WL 21766560, No. IP 99-0391-C-M/S  (S.D. Ind. 2003) . . . . . . . . . 34

*Arndt v. Security Bk. SSB. Emp. Pension Plan*,
    182 F.3d 538 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Beach v. Commonwealth Edison Co.*,
    382 F.3d 656 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Beach v. Commonwealth Edison Co.*,
    388 F.3d 1133(7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Bellas v. CBS*,
    221 F.3d 517 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Berger v. Edgewater Steel Co.*,
    911 F.2d 911 (3d Cir. 1990), *cert. denied*,
    499 U.S. 920 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

iv

*Blessitt v. Retirement Plan for Emp.,*
    848 F.2d 1164 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bloemker v. Laborers' Local 265 Pension Fund,*
    605 F.3d 436 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Bunnion v. Consolidated Rail Corp.,*
    No. Civ. A. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998) . . . . . . . 49

*Bynum v. Cigna Healthcare of North Carolina,*
    287 F.3d 305 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Campbell v. Bankboston, N.A.,*
    327 F.3d 1 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Central Laborers' Pension Fund v. Heinz,*
    541 U.S. 739, 124 S. Ct. 2230 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Champion v. Black & Decker, Inc.,*
    550 F.3d 353 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cigna Corporation v. Amara,*
    563 U.S. ___, 131 S. Ct. 1866 (2011) . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*Cinotto v. Delta Air Lines, Inc.,*
    674 F.3d 1285 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 40

*Conkright v. Frommert,*
    559 U.S. 506 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 44

*Constantino v. TRW, Inc.,*
    13 F.3d 969 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Corcoran v. Bell Atlantic Corp.,*
    1997 WL 602859, 21 EBC 2360 (E.D. Penn. Sept. 23, 1997),
    *affirmed without opinion,* 159 F.3d 1350 (3d Cir. 1998) . . . . . . . . . . . . . . 23

v

*Cross v. Bragg*,
   329 Fed. App'x. 443 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Cross v. Fleet Reserve Ass'n Pension Plan*,
   2007 WL 7022754 (D. Md. Jul. 3, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Dade v. North American Philips Corp.*,
   68 F.3d 1558 (3d Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Daft v. Advest, Inc.*,
   658 F.3d 583 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

*Eastes v. Verizon Communications*
   2005 WL 483369,
   Civil Action No. 2:01-0763 (S.D. W. Va., March 1, 2005) . . . . . . . . . . . . 51

*Elliott v. Sara Lee Corp.*,
   190 F.3d 601 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) . . . . . . . . . . . . . . . 50

*Gillis v. Hoechst Celanese Corp.*,
   4 F.3d 1137 (3d Cir.), *cert. denied*,
   511 U.S. 1004, 114 S. Ct. 1369, 128 L. Ed. 2d 46 (1993) . . . . . . . 24, 33, 34

*Harms v. Cavenham Forest Indus., Inc.*,
   984 F.2d 686 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Heinz v. Central Laborers' Pension Fund*,
   303 F.3d 802 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

*Hunger v. AB*,
   12 F.3d 118 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Lifecare Mgmt. Services v. Insurance Mgmt. Adm'rs*,
   703 F.3d 835 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

vi

*McCoy v. Bd. of Trustees of Baboree Int'l Union*,
　　188 F. Supp. 2d 461 (D. N.J. 2002), *aff'd*,
　　60 Fed. Appx. 396 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Musmeci v. Schwegmann Giant Super Markets, Inc.*,
　　332 F.3d 339 (5th Cir. 2003), *aff'd*,
　　60 Fed. Appx. 396 (3d Cir. March 25, 2003) . . . . . . . . . . . . . . . . . . . . . . . 45

*Nachman Corp. v. Pension Benefit Guaranty Corp.*,
　　446 U.S. 359, 100 S. Ct. 1723, 64 L. Ed. 2d 354 (1980) . . . . . . . . . . . . . 26

*Paese v. Hartford Life Accident Ins. Co.*,
　　449 F.3d 435 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Pakovich v. Broadspire*,
　　535 F.3d 601 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Richardson v. Pension Plan of Bethlehem Steel*,
　　67 F.3d 1462 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Saffle v. Sierra Pacific Power Company Bargaining Unit
Long-Term Disability Income Plan*,
　　85 F.3d 455 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Savani v. Washington Safety Management Solutions*,
　　474 Fed. Appx. 310 (4th Cir. March 20, 2012) . . . . . . . . . . . . . . . . . . *passim*

*Schadler v. Anthem Life Ins. Co.*,
　　147 F.3d 388 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*,
　　128 F.3d 541 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Shaw v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*,
　　750 F.2d 1458 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Varity Corp. v. Howe*,
　　516 U.S. 489, 116 S. Ct. 1065 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

vii

*Wheeler v. Dynamic Engineering, Inc.*,
    62 F.3d 634 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Zipes v. TransWorld Airlines, Inc.*,
    455 U.S. 385 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

## **Statutes**

ERISA § 204(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

ERISA § 204(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

ERISA § 502(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 50, 51

ERISA § 502(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Employee Retirement Income Security Act of 1974 (ERISA)
29 U.S.C. §§ 1001 - 1461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. § 1054 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ERISA Anti-Cutback Rule
29 U.S.C. § 1054(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. § 1054(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 37

29 U.S.C. § 1054(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 35

29 U.S.C. § 1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 29, 45

29 U.S.C. § 1132(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

**Regulations**

26 C.F.R. § 1.411A-2(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

26 C.F.R. § 1.411A-6(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

26 C.F.R. § 1.411(d)–3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

26 C.F.R. § 1.411(d)–3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

26 C.F.R. § 1.411(d)-3(g)(6)(I.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

26 C.F.R. § 1.411(d)-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

26 C.F.R. § 1.411(d)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

26 C.F.R. § 1.411(d)(6)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Other Authorities**

Cummings, Frank,
     ERISA Litigation: An Overview of Major Claims and Defenses,
     SF76 ALI-ABA 353 (Jan. 18, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 47-48

Retirement Equity Act ("REA"), Pub. L. No. 98-397 . . . . . . . . . . . . . . . . . . . . . 30

S. Rep. No. 98-575, 98th Cong., 2d Sess. (1984) . . . . . . . . . . . . . . . . . . . 30, 31, 33

## STATEMENT OF JURISDICTION

Plaintiffs/Appellees agree that the United States Court of Appeals for the Fourth Circuit has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

The issues presented on appeal are:

1. Whether WSMS may amend a defined benefit plan to "freeze" away promised early retirement supplemental benefits.

2. Whether the deletion of accrued benefits by freezing the Plan violates the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 through 1461; and ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), which prohibits reducing early retirement and accrued benefits.

3. Whether the District Court was correct in concluding that the Plan was unambiguous in that the early retirement supplement was accrued at $700 in 2005 and thereafter.

4. Whether the District Court properly exercised its discretion in refusing to remand a futile question to the Administrative Committee since it would be a breach of fiduciary duty for the Committee to interpret the Plan in a manner to delete promised and accrued supplemental early retirement benefits.

5. Whether the District Court properly exercised its discretion by not requiring

1

Plaintiff Taylor ("Taylor") to file a claim under the Plan since the named Class Plaintiff had exhausted his administrative remedies under ERISA and another review would be futile.

## STATEMENT OF THE CASE

### I.    STATEMENT OF FACTS

#### A.    The WSMS Plan

Both named Plaintiffs, Noorali "Sam" Savani and Robert P. Taylor, Jr.,  were employed at the Savannah River Site ["SRS"] with Washington Savannah River Company ["WSRC"]. Both WSRC and Washington Safety Management Solutions, LLC [WSMS], now URS Professional Solutions, LLC ["URS[1]"], are wholly owned subsidiaries of Washington Group International ["WGI"], now URS Energy & Construction, Inc. WSMS was newly formed subsidiary of WGI and was hiring WSRC employees.  WSMS in March 1997 held meetings at which WSRC employees were informed of the start-up of the company, the potential for their employment with the company, and their retirement benefits if they transferred. Sam Savani and Robert P. Taylor, Jr  were in a group of approximately 150 who transferred from WSRC to WSMS in 1997 based on the promises by WSMS. Contrary to Appellants' URS's statement of facts concerning supplemental benefits that "Prospective WSMS

---

[1] Defendants/Appellants URS Professional Solutions, LLC and its pension Plan are collectively referred herein as "URS"

2

employees were ... not promised nor told that the benefit was a 'lifetime or 'vested' benefit that would not -or could not -be taken away" and that "There is no evidence to the contrary" [Opening brief, Doc 12, p. 5], at these meetings the presentations promised to the Class and Subclass if they transferred that the WSMS Pension Plan was:

- **Identical to WSRC Pension Plan**

- **All WSRC Eligibility Service Counts**

- Total Benefit is Calculated under WSMS Plan and then Offset by WSRC Benefit

- **All Rights and Features Preserved**

  **-Early Retirement Rules**

  **-Early Retirement Factors**

  **-Vesting**

  -Company Paid Survivor Benefits

- Plan Assets Held Separately from WSRC Plan... (Emphasis added). (Joint Appendix[2] 701,703,704), and

---

[2] Joint Appendix is referred to as "JA"

3

- that "**SPECIAL PENSION BENEFITS**" would be payable starting October 1, 1998 at $525 per month in 1998 and increased $25 per year to **$700 per month beginning January 1, 2005 and thereafter.** (JA 705-707).

The promised Special Pension Benefits available under the WSMS Plan could be used for any purpose, not just as a medical supplement. (JA 113).

Also contrary to the implication that Class members knew that the promised Special Pension Benefits could be taken away [Opening Brief Doc 12 p. 5 fn. 9], Sam Savani testified by affidavit:

> I (and others) were offered by WSMS a $700 per month benefit until I am 65 and $200 beyond that date to induce me to transfer to and work for Washington Safety Management Solutions [WSMS]. In reliance on that representation, I transferred to WSMS. My retirement papers issued by WSMS, clearly states in writing that I will be getting $700 per month until I am 65 and $200 after that. The retroactive taking away of the $700 per month benefit constitutes a misrepresentation by WSMS of benefits used to induce me to transfer to WSMS. (JA 674).

Terence J. Voss affirmed:

> I was employed in Aiken, South Carolina by the Westinghouse Savannah River Company now the Washington Savannah River Company ["WSRC"] and transferred to Washington Safety Management Solutions, L.L.C. ["WSMS"].  There were approximately 150 people who transferred from WSRC to WSMS. I and the approximately 150 people who transferred from WSRC to WSMS were  promised that as part of that transfer we would be entitled to an early retirement stipend. I retired in August 2005 and received one payment of the $700 early retirement stipend. Thereafter, WSMS terminated the $700 a month retirement benefit to me....The loss of the $700 retirement benefit has been a hardship". (Voss Affidavit JA 117).

4

Further Robert P. Taylor, Jr. verified that "I was employed by Washington Savannah River Company, LLC [WSRC]. In 1997, I (and others) were offered by Washington Safety Management Group, LLC [WSMS] a $700 per month as an early retirement benefit until age 65 and $200 beyond that date to induce me to transfer to and work for WSMS, an affiliate of WSRC. In reliance on that representation, in 1997 I changed my position to WSMS....I took early retirement from WSMS on September 26, 2006. When I retired from WSMS I wasn't paid the monthly supplement benefit of $700 which I was promised under the WSMS Pension Plan." (Taylor Affidavit JA 1341-42). So the only evidence presented to the members of the Class and Subclass was that this supplemental special pension early-retirement benefit would be available so long as they worked at WSMS after they transferred. The presentation materials and communications to the Class and Subclass never stated that the supplemental early retirement benefits could be or would be taken away.

The WSMS Pension Plan, as implemented, included the promised monthly supplemental benefits for WSRC's employees as follows:

**4.12   Supplemental Benefits**

(a)      If a Member who:

(i)  otherwise satisfies the requirements for a Pension under this Plan; and

(ii) has at least one year of service with WSMS; and

5

(iii) transferred to the Plan from an Affiliated Employer on or before January

1, 1998 or transfers to the Plan from WSRC;

he shall be entitled to a monthly supplement (which shall commence with the

first Pension payment made under the Plan on account of such retirement and

the last payment shall be in the month preceding the Member's attainment of

Normal Retirement Age) equal to the following:

| Effective Date | Monthly Supplement |
|---|---|
| October 1, 1998 | $525 |
| January 1, 1999 | $550 |
| January 1, 2000 | $575 |
| January 1, 2001 | $600 |
| January 1, 2002 | $625 |
| January 1, 2003 | $650 |
| January 1, 2004 | $675 |
| **January 1, 2005 and Thereafter** | **$700** |

(Emphasis added).

**B.**    **2004 Deletion of § 4.12(a) by the Committee of the Plan**

Unknown to Plan participants, on December 28th, 2004 the Benefits Committee[3] administering the Plan amended the Plan so as to eliminate the Section 4.12(a) $700 a month Supplemental Benefit <u>effective December 30, 2004</u>. (JA 789). Unaware that this amendment occurred, Mr. Savani inquired about the benefits he would receive if he took early retirement. He received a projection representing that his early retirement benefit would include the $700 per month by stating "the monthly supplement of $700 is payable beginning on May 1st, 2005 through November 1st. 2016". (JA787). Mr. Savani took early retirement on April 30th, 2005. The action by the Committee was not communicated to the Plan beneficiaries until after Mr. Savani retired. WSMS wrote letters dated June 29th, 2005 to both those retired in 2005 (or eligible to do so) and those who had transferred from WSRC saying that Supplemental Benefits were eliminated and would not be paid by either the Plan or WSMS <u>after August 1st, 2005</u>; and that those that were eligible would be receiving a "lump sum payment representing the amount of unpaid benefits you would have received had the amendment not been made". (JA 788).

---

[3] The Benefits Committee that administers the Plan is now named the Administrative Committee. For simplicity, both are referred to as the Committee in this brief.

C.    **2005 Deletion of § 4.12(a) by the Board of Directors of the Plan**

Approximately six months after the letters to Plan Participants, on December 30th, 2005 and effective on *December 31, 2005*, the WSMS Board of Directors amended § 4.12 and deleted § 4.12(a) early retirement supplemental benefits. (JA 369).  At the same time, the Board froze the Plan.

D.    **2006 Termination of Benefits**

On or about June 8th, 2006, six months after the Board's action, Sam Savani received a letter from Ted A. Myers, Director of Human Resources, stating that the WSMS operating fund had been paying the $700 a month supplemental benefit; and that the Plaintiff had correctly received $700 a month from May 2005 through August 2005, but incorrectly received the $700 per month thereafter.

## II.    COURSE OF PROCEEDINGS

A.    **Savani Alleged That Both the 2004 Amendment and the 2005 Freeze Amendment Violated ERISA's Anti-cutback Rule**

In the lawsuits and claim filed in this case, Sam Savani alleged that both the 2004 amendment and the 2005 freeze amendment violated ERISA. (JA 69, 78, 171). Specifically Savani alleged in the first amended complaint:

> Neither the Administrative Committee nor the Board of Directors had the authority in violation of the anti-cut back rule in 29 U.S.C. § 1054 and in violation of Section 10.01 of the Plan to eliminate accrued benefits or to eliminate benefit options under the Plan. (JA 173)

And in his administrative claim, the claim alleged:

> The WSMS plan specifically made the supplemental benefits nonforfeitable accrued benefits as an extra ERISA benefit...The amendment effective December 31, 2005 and retroactively applied to January 1, 2005 is illegal and void. The plan amendment applies to all retirees and transferees covered under supplemental benefits. (JA 785).

### B.     Savani Alleged That Exhausting of Administrative Remedies Would Be Futile - Which was Proven to be Correct

In the amended complaint filed, Savani alleged that the exhaustion of administrative remedies would be futile. (JA 78). While the District Court required administrative remedies to be exhausted (JA 151), indeed, the exhaustion of administrative remedies was proven to be futile. The administrative committee did indeed find that the early retirement pension benefits were not accrued **and had not been earned** unless retirement occurred prior to the amendments! (JA 162-176)

### C.     The Fourth Circuit Held That WSMS Could Not Eliminate Accrued Early-retirement Benefits

Defendants claim that this Court did not reach the question of whether the 2005 Freeze amendment also violated the anti-cutback rule of ERISA when the Fourth Circuit held:

> Noorali "Sam" Savani brought this action under the Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (2006), claiming that the termination of an early retirement pension supplement by Washington Safety Management Solutions ("WSMS") violated ERISA's anti-cutback and notice provisions. Because the plain language of the WSMS pension plan ("the

9

Plan") includes the early retirement supplement in its calculation of accrued benefits, we must reverse the grant of summary judgment to WSMS and remand for further proceedings consistent with this opinion. *Savani v. Washington Safety Management Solutions*, 474 Fed. Appx. 310 (4th Cir. 3-20-2012). (Emphasis added).

Contrary to URS' statement, it is submitted that this Court did consider both the 2004 Committee Amendment and 2005 Freeze amendment because this Court in its decision stated that "The Plan, **prior to amendments**, provided in relevant part: "Accrued Benefit' means, as of any date of determination, the normal retirement Pension computed under Section 4.01(b) . . . less the WSRC Plan offset as described in Section 4.13, plus any applicable supplements as described in Section 4.12. . . .". (Emphasis added *id.* 312). Since the decision refers to "to amendments" using the plural, evidently this Court was aware that both the 2004 and 2005 amendments were claimed to have violated the anti-cutback rule of ERISA. Thus this Court's holding "that the Plan's clear terms include the § 4.12(a) supplement in the definition of accrued benefits" *id.* 314 appears to apply equally to both amendments.

**D.    The 2005 Amendment Not Only Froze Benefits, it Eliminated Supplemental Early-retirement Benefits and Allowed Plan Beneficiaries to Continue to Earn Eligibility**

URS boldly claims that "Indeed, the Freeze amendment was not drafted with any consideration of the effect it might have on Section 4.12(a) of the Plan because - at the time Section 4.12(a) of the Plan did not exist." [Opening Brief p. 11, Doc. 12].

10

If this was true, then why did the Board of Directors find it necessary to delete Section 4.12(a) of the Plan; and make the amendment effective December 31, 2005 instead of December 30, 2004, which was the effective date of the Committee's amendment. Since the URS Defendants claimed that the freeze of benefits as of December 31, 2005 relieved paying Subclass members, Robert P. Taylor, Jr. was (at the insistence of URS *see* JA 1322) added as a named Plaintiff and Subclass representative.

On December 31, 2005 the date the freeze became effective, Robert Taylor was 49 years of age, had transferred from WSRC, an affiliated organization of the WSMS, had worked for the WSMS for more than one year, and had more than 15 years of total service with WSRC and WSMS. Robert P. Taylor turned 50 years of age on April 29, 2006, five months after the Board's action adopting the Freeze. Robert P. Taylor continued to work for and retired from WSMS on September 26, 2006, less than eight months after the WSMS Board's action adopting the 2005 amendment. Robert Taylor has been receiving his early retirement pension payment from the WSMS Plan which does not include the $700 per month early retirement supplement. (JA. 38).

The Plaintiffs and all members of the Subclass meet the Section 4.12(a) (ii) and (iii) criteria because all had at least one year of service with WSMS; and all

11

transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transferred to the Plan from WSRC. (JA. 1731).

Taylor is also a member of the Class (by definition of the Subclass[4]) (JA 1335) which is represented by Sam Savani who did exhaust administrative remedies.

"However, Defendants contend that the members of the Subclass are not eligible [for § 4.12(a)] because they did not satisfy the requirements (*i.e.* **had not earned the benefits by December 31, 2005**), when all benefits were frozen." [Opening Brief p. 14, Doc. 12, Emphasis added]. The administrative claim for Savani included the principal issues asserted in this appeal (*i.e.* the Subclass had not earned the benefits and not satisfied the requirements of age and service by December 31, 2005). The Committee's administrative decision stated:

> Fina1ly, and most importantly, a **participant does not earn the $700 Monthly Supplement until he or she actually retires** on his or her early retirement date. Only until an eligible **participant satisfies the requisite age and service** and then elects early retirement would the participant be entitled to the $700 Monthly Supplement....(JA 948, Emphasis added).

---

[4] The Subclass is defined as: "**All members of the Class** defined in the Plaintiff's amended motion for certification who, as of December 31, 2005, either (1) did not have 15 total years of service with WSMS or an Affiliated Employer as defined in § 1.02 of the Plan, or (2) was not 50 years of age, or (3) did not meet the 25 years of service and age 45 but less than 50 years of age requirements for an Optional Retirement Pensions defined in § 4.04 of the WSMS Plan." (Emphasis added).

## III.  DECISION OF DISTRICT COURT

Contrary to the URS's position, the District Court considered all of Defendants' arguments, and did not sidestep their legal argument that the freeze amendment was permissible under ERISA. In it's July 2, 2013 order denying Defendant's motion for reconsideration, the District Court addressed Defendants' claim that the court failed to address the amendments to Section 1.01 of the Plan that state "[n]otwithstanding anything to the contrary in this Plan, a Member's Accrued Benefit shall be 'frozen' as of December 31, 2005 and shall not increase thereafter." (JA 1719-1720). Also, contrary to the Defendants' arguments, the District Court's March 29 Order was not determined by a *de novo* interpretation of a limited portion of the Board of Directors' amendments. The District Court exercised its discretion in refusing to remand the case to the Plan's benefits committee to interpret the term "certain benefits" and determined that Taylor could grow into this benefit, as a matter of law. The District Court drew specifically on the Fourth Circuit's analysis in reaching its conclusion. "In their Order, the Fourth Circuit explicitly articulated that the $700 Monthly Supplement was an "accrued benefit" and thus the pre-2004 calculation of an accrued benefit remains the same. Moreover, the Fourth Circuit explicitly termed the $700 benefit an "early retirement benefit." [Dkt. No. 181 at

13

11]." The Court then determined that Taylor was entitled to grow into this benefit. (JA 1719-1722).

Concerning requiring Taylor to exhaust administrative remedies, the District Court exercised its discretion by holding:

> As explicitly set out in the court's Order on Summary Judgment, the court found no ambiguity in the terms of the Plan, as amended in 2005. Moreover, to the extent that Defendants are now trying to raise a broader administrative exhaustion argument, they have waived such by not raising the argument previously – indeed, Defendants did not even broach the exhaustion argument at the lengthy hearing that the court held on the cross-motions for summary judgment. (JA 1720-1721).

Concerning remand to the Committee, the Court held:

> Finally, based on this analysis, remand to the Plan's benefits committee would be futile because a different interpretation of this clear language would be an abuse of the committee's discretion. (JA 1721).

## **SUMMARY OF ARGUMENT**

The Fourth Circuit determined that the $700 Supplement was an "accrued benefit" under the terms of the Plan, the inquiry should end there. All Plan participants (both the Class and Subclass) were promised the same early retirement supplements. All have the right to grow into being eligible to receive the accrued early retirement benefits.

Members of the Subclass are entitled to receive the $700 Supplement because those benefits were accrued as to them on the date of the "freeze" at the $700 per

month level, which could not be reduced or eliminated as accrued benefits for such individuals.

Under § 10.01 of the Plan and ERISA and implementing regulations, the Board was not permitted to delete and "freeze" away the supplemental early retirement benefits under the Plan.

"Any change to the amount or existence of the § 4.12 supplement constituted a change to an "accrued benefit", *Savani supra,* is the law of this case.[5]  474 Fed. Appx. at 316. The District Court's analysis clearly reflects a fair understanding of issues. The District Court never found that the Freeze Amendment was impermissible as a matter of law, but only that the supplemental early retirement could not be eliminated because the Fourth Circuit determined as the law of this case that the $700 Supplement was an "accrued benefit" under the terms of the Plan and that it was an early retirement benefit.

The amendment to Section 1.13 of the Plan states "Although the Plan is frozen as of December 31, 2005, an employee shall continue to earn Eligibility service in accordance with the terms of the Plan for purposes of determining eligibility for certain benefits and eligibility for a vested Pension". (JA 358). "Certain Benefits" is not ambiguous when read in context. It applies only "in accordance with the terms of

---

[5] Moreover, any interpretation that denies the $700 per month supplement also violates Section 10.01 of the Plan.

15

the Plan" which according to Article 4 include early retirement § 4.03 benefits and § 4.12 supplements (among others).

Even when an ERISA-governed plan vests total discretionary authority in a plan administrator to "interpret" the plan, a plan administrator cannot "interpret" the plan in a manner to delete early retirement accrued benefits in violation of ERISA, or in a manner that violates § 10.01 of the Plan. The District Court need not remand to the Plan administrator for interpretation where it would be futile; or would be an abuse of discretion.

The District Court did not abuse its discretion by not requiring Taylor to exhaust his administrative remedies under the Plan. This is especially so since the Committee in denying Savani's administrative claim found that Savani (similarly to Taylor) did not earn the $700 Monthly Supplement and "[o]nly until an eligible participant satisfies the requisite age and service and then elects early retirement would the participant be entitled to the $700 Monthly Supplement.".

## <u>ARGUMENT AND CITATIONS OF AUTHORITY</u>

### I.    STANDARD OF REVIEW

The Appellees/Plaintiffs agree that issues of law are reviewed *de novo*. However, Appellees/Plaintiffs do <u>not</u> agree that in this case the ERISA-governed benefit plan vests the plan administrator with the discretionary authority to interpret

16

the plan in a manner that would allow the reduction or elimination of accrued benefits, or early retirement benefits, or in a manner prohibited by § 10.01 of the Plan. On the first appeal of this case, the District Court and this Court did review the decision of the Committee. This Court on appeal stated the standard in this case to be applied is: "even as an ERISA plan confers discretion on its administrator to interpret the plan, the administrator is not free to alter the terms of the plan or to construe unambiguous terms other than as written."

Concerning reviewing a potential remand for additional administrative review, a district court has discretion to remand an issue to a plan administrator for review or analysis and any such decision is reviewed for abuse of discretion. *Champion v. Black & Decker, Inc.*, 550 F.3d 353, 362-63 (4th Cir. 2008). However, the Fourth Circuit has counseled that "remand should be used sparingly." *Id.* (quoting *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999).

## II.    DISCUSSION

While this case has been pending for almost eight years with two appeals, members of the Class and Subclass have been aging beyond their retirement age of 65 years. If they have not taken early retirement, once 65 years old, they will never be entitled to early-retirement supplements. Simply put, every month and year URS can cause a delay saves the Defendants $700 per month multiplied by everyone in the

Subclass who wants to take early-retirement, but finds they cannot do so without the $700 per month Supplement. Now URS, after losing both in the Court of Appeals and in the District Court (on two motions), are delaying these payments again[6]. URS wants this Court to remand so that the Committee can again interpret the Plan amendments (which it has already done).

## III.  WHILE THE A FREEZE AMENDMENT IS PERMISSIBLE, IT CANNOT ELIMINATE EARLY RETIREMENT SUPPLEMENTS

### A.  The ERISA's Anti-Cutback Rule Protects Accrued and/or Early Retirement Benefits

ERISA's anti-cutback rule provides that: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1). As conceded by URS, "a plan cannot eliminate an already "accrued benefit" without violating ERISA's anti-cutback rule". [Opening Brief, page 22 Doc. 12]. The implementing regulations state that the anti-cutback rule protects benefits that have accrued and a plan is not a qualified plan ... if a plan amendment decreases the accrued benefit of any plan participant. 26 C.F.R. § 1.411(d)–3. Also, "A plan amendment violates the requirements of section 411(d)(6) if it is one of a series of plan amendments [within a 3–year period] that, when taken together, have the effect

---

[6] The last administrative review delayed the progress of this case from September 17th, 2007 to July 18th, 2008. (JA 24-25).

of reducing or eliminating a section 411(d)(6) protected benefit in a manner that would be prohibited by section 411(d)(6) if accomplished through a single amendment." *Id.* at (iii). So Defendants are jeopardizing the status of the Plan as tax exempt when WSMS, through a series of Plan amendments, deleted early retirement benefits.

Indeed, the regulations support the District Court in its determination that Taylor and the Subclass can grow into satisfying the pre-amendment conditions of age and service by providing:

> ...a plan is treated as decreasing an accrued benefit if it is amended to eliminate or reduce a section 411(d)(6)(B) protected benefit as defined in paragraph (g)(15) of this section. This paragraph (b)(1) applies to participants who satisfy **(either before or after the plan amendment)** the preamendment conditions for a section 411(d)(6)(B) protected benefit. (Emphasis added). 26 C.F.R. § 1.411(d)-3(b).

While the regulations, under some circumstances, allow a plan to be amended to eliminate or reduce section 411(d)(6) protected benefits, here the benefits not only were accrued at the level of $700 per month, but also were promised and earned by the Subclass working for one year at WSMS, § 4.12(a)(ii) of the Plan.

The regulations additionally give an example which illustrates the right to continue to age (grow) into an accrued benefit which, under the example, remains a "protected benefit":

19

Example 1. Defined benefit plan X provides, among its optional forms of benefit, for a subsidized early retirement benefit payable in the form of an annuity and available to employees who terminate from employment on or after their 55th birthdays. In addition plan X provides for a single sum distribution available on termination from employment or termination of the plan. The single sum distribution is determined on the basis of the present value of the accrued normal retirement benefit and does not take the early retirement subsidy into account. Plan X is terminated December 31, 1991. Employees U, age 47, V, age 55, and W, age 47, all continue in the service of the employer. Employees X, age 47, Y, age 55 and Z, age 47, terminate from employment with the employer during 1991. Employees U and V elect to take the single sum optional form of distribution at the time of plan termination. Employees X and Y elect to take the single sum distribution on termination from employment with the employer. The elimination of the subsidized early retirement benefit with respect to employees U, V, X and Y does not result in a violation of section 411(d)(6). This is the result even though employees U and X had not yet satisfied the conditions for the subsidized early retirement benefit. Because employees W and Z have not selected an optional form of benefit, **they continue to have a 411(d)(6) protected right to the full array of section 411(d)(6) protected benefits provided under the plan**, including the single sum distribution form **and the subsidized early retirement benefit**. (Emphasis added). 26 C.F.R. § 1.411(d)-4, A-2 (iv)[7].

URS complains that their District Court briefing cited these tax regulations, but the Court didn't address them in either of its orders. This was unnecessary since the Court determined that Robert Taylor and the Subclass can grow into the right to

---

[7] 26 C.F.R. §§ 1.411(d)-4, A-6(a)(1) ("The availability of a section 411(d)(6) protected benefit may be limited to employees who satisfy certain objective conditions provided the conditions are ascertainable, clearly set forth in the plan and not subject to the employer's discretion . . .") is taken out of context with the remainder of the regulations and even so is inapposite to our case.

receive early retirement supplemental benefits when they met the age (50) and service (15 years) requirements. URS cites out of context portions of *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 124 S. Ct. 2230 (2004) for the proposition that "employers are perfectly free to modify the deal they are offering their employees, as long as the change goes to the terms of compensation for continued, future employment..." citing *Heinz v. Central Laborers' Pension Fund*, 541 U.S. at 747. In *Heinz v. Central Laborers' Pension Fund*, 303 F.3d 802 (7th Cir. 2002), the Seventh Circuit decided that a pension plan amendment which expands the types of post-retirement employment that triggered mandatory suspension of early retirement benefits violated ERISA's "anti-cutback" rule, 29 U.S.C. § 1054(g), when applied to suspend the benefits of the plaintiffs, who retired before the amendment. The Supreme Court affirmed the Seventh Circuit, stating:

> There is no doubt about the centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them....ERISA does, however, seek to ensure that employees will not be left emptyhanded once employers have guaranteed them certain benefits. . . . **[W]hen Congress enacted ERISA, it `wanted to . . . mak[e] sure that if a worker has been promised a defined pension benefit upon retirement — and if he has fulfilled whatever conditions are required to obtain a vested benefit — he actually will receive it.'" ...ERISA's anti-cutback rule is crucial to this object**,...Now § 204(g) provides that "a plan amendment which has the effect of . . .eliminating or reducing an early retirement benefit . . . with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits." 29 U.S.C. § 1054(g)(2). Hence the question here: did the 1998 amendment to the

21

Plan have the effect of "eliminating or reducing an early retirement benefit" that was earned by service before the amendment was passed? The statute, admittedly, is not as helpful as it might be in answering this question; it does not explicitly define "early retirement benefit," and it rather circularly defines "accrued benefit" as "the individual's accrued benefit determined under the plan. . . ." § 1002(23)(A). Still, **it certainly looks as though a benefit has suffered under the amendment here**, for we agree with the Seventh Circuit that, as a matter of common sense, "[a] participant's benefits cannot be understood without reference to the conditions imposed on receiving those benefits, and an amendment placing materially greater restrictions on the receipt of the benefit `reduces' the benefit just as surely as a decrease in the size of the monthly benefit payment." 303 F.3d, at 805.... Pp. 744-746 (Emphasis added).

The answer to question posed by the Supreme Court as the test here: "Did the [2005] amendment to the Plan have the effect of "eliminating or reducing an early retirement benefit" that was earned by service before the amendment was passed?" is clear here. The 2005 amendment did eliminate or reduce early retirement supplemental benefits. Based on their years of service (being more than one year at WSMS as required by § 4.12(a)(ii)) Taylor[8], and the Subclass, had earned the accrued the $700 Supplement. Under the Plan § 4.05, Taylor[9] was "fully vested" and had "a non forfeitable right to [] his accrued benefit". (JA 261). Because the Subclass members were deprived of an early retirement benefit that had accrued to the level of

---

[8] Taylor had a cumulative 15 years of service at WGI related entities service at WSMS as of the date of the freeze Amendment.

[9] Taylor had more than 5 years of eligible service at WSMS as of the date of the freeze Amendment.

$700 per month (which they had already earned), their benefits were "cutback". Like in *Heinz v. Central Laborers' Pension Fund* "it certainly looks as though a benefit has suffered under the amendment here". *Id*.

*Blessitt v. Retirement Plan for Emp.,* 848 F.2d 1164 (11th Cir. 1988), cited by URS, does not mandate a contrary conclusion. In *Blessitt*, there was no question of reducing early retirement benefits, as here. In *Blessitt*, the plan was established in 1972 and was terminated on December 31, 1982, pursuant to the sale of substantially all of Dixie Engine's assets. Blessitt was hired prior to the establishment of the plan and was continuously employed by Dixie Engine throughout the eleven year period in which the plan was in effect. On the termination date, Blessitt was 46 years old. Here Taylor and some members of the Subclass are receiving early retirement benefits, but not the early retirement supplements. Taylor did indeed work for WSMS long enough and has reached 50 year of age in order to receive early retirement benefits, not so in *Blessitt*.

URS, then cites *Corcoran v. Bell Atlantic Corp*. 21 Employees benefits cases 2360, 1997 WL 602859, (E.D. Pa. Sept. 23, 1997), *affirmed without opinion* 159 F.3d 1350, *an unpublished decision* for the proposition that instead of amending a plan, an employer can lawfully freeze the plan by eliminating any future accrual or increase of benefits. URS leaves out the first sentence of the paragraph from which they quote,

23

to wit: "Finally, our conclusion that plaintiffs are entitled to "grow into their early retirement subsidy for the purposes of *qualifying* for, but not *calculation* of, that subsidy is consistent with the spirit of ERISA itself. The case supports the District Court's decision in this case, as follows:

> Our Court of Appeals has held that "an employer must provide funding for early retirement benefits if there is the possibility that its employees will 'grow into' these benefits at a date after its early retirement plan is eliminated." *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1145 (3d Cir.), *cert. denied* 511 U.S. 1004, 114 S. Ct. 1369, 128 L. Ed. 2d 46 and 511 U.S. 1031 (1993) (emphasis added); see also *Dade v. North American Philips Corp.*, 68 F.3d 1558, 1562 (3d Cir.1995). Moreover, plaintiffs should "be able to qualify for early retirement benefits at a later date by meeting the plan's pretermination requirements." *Id.* at 1145–46. Here, although the pension plan was amended and not terminated, the effect under § 204(g) is the same. "Congress intended early retirement benefits to have the same protection in a plan termination that they would have in an amendment." *Dade*, 68 F.3d at 1563 n. 2. **It is clear, then, that plaintiffs are entitled to qualify for accrued benefits under the terms of the pre-amendment plan, and that they must be allowed to do so by providing years of post-amendment service.** (Emphasis added).

Here the Subclass are entitled "grow into their early retirement subsidy for the purposes of *qualifying* for [by age or years of service], but not *calculation* of [the early retirement subsidy benefit set at $700 per month].

The freeze resolution amended Section 1.01 as follows:

Effective December 31, 2005, Section 1.01 is hereby amended by adding the following sentence at the end thereof as follows:

24

"Notwithstanding anything to the contrary in this Plan, a Member's accrued benefit shall be 'frozen' as of December 31, 2005 and **shall not increase thereafter**."(Emphasis added) (JA 357).

So according to the Plan in effect after the Freeze of the Plan, supplemental benefits on the effective date of December 31, 2005 were frozen at $700 per month. They have not "increase[d] thereafter." Ergo, Plaintiff, Robert Taylor and the Subclass are entitled to qualify for the $700 per month supplement.

Even so after the freeze, the plan's plain language still gave the Subclass entitlement to earn early retirement benefits:

> "Although the Plan is frozen as of December 31, 2005, **an employee shall continue to earn Eligibility service in accordance with the terms of the Plan for purposes of determining eligibility for certain benefits and eligibility for a vested Pension**". (Emphasis added) (JA 358).

So the Plan after the Freeze amendment continued to allow the Plaintiff and the Subclass "to earn Eligibility service" so as to become eligible to receive § 4.12(a) supplemental retirement benefits. Simply put, Robert Taylor earned by one year of service at WSMS the right to receive $700 per month supplement. While working as a WSMS employee, Robert Taylor satisfied the eligibility requirements (15 years of service and age 50 or older) for a pension under the WSMS Plan.

Also, the Plan must be interpreted according to the reasonable expectation of the beneficiaries. There is no doubt that the reasonable expectation of Mr. Savani, Mr.

25

Voss, Robert Taylor and the Subclass was that they would receive upon early retirement the $525 - $700 per month supplement. "Employees accruing benefits through plans that qualify under ERISA and the Tax Code are promised benefits upon retirement and, subject to satisfaction of conditions precedent, rightfully expect annual payments of their accrued benefit." *Id.* citing *Shaw v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan,* 750 F.2d 1458, 1465-66 (9th Cir. 1985). The conditions precedent were satisfied for Robert Taylor and other transferees to WSMS. They are entitled to the benefit promised. *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 375, 100 S. Ct. 1723, 64 L. Ed. 2d 354 (1980) (stating that Congress wanted to "mak[e] sure that if a worker has been promised a defined pension benefit upon retirement and if he has fulfilled whatever conditions are required to obtain a vested benefit he actually will receive it").

Eligibility for Supplemental benefits under § 4.12 (JA 279) is defined the same as eligibility for all other Article 4 payments including eligibility for normal retirement under § 4.01 (JA 256), post 65 retirement under § 4.02 (JA 257), Early retirement under § 4.03 (JA 259), Optional retirement under § 4.04 (JA 260), Incapacity retirement under § 4.06 (JA 262), Survivor benefits under § 4.08 (JA 268), and Spousal benefits under § 4.09 (JA 270). URS does not contest that Taylor did grow into and met, and the Subclass can meet, the early retirement under § 4.03 of the

26

Plan after the freeze. Plainly Robert Taylor's service earned after the freeze was counted for eligibility for his pension under § 4.03 since he retired and has been receiving a WSMS pension. There is no other provision that says that part of <u>Article 4 Eligibility for and Amount of Benefits</u> under the Plan counts - but eligible service under § 4.12(a) is a "certain benefit" that doesn't count! Assuming *arguendo* there is some ambiguity (which is denied) under § 1.13 as applicable to § 4.12(a) after the freeze in the phase "an employee shall continue to earn Eligibility service in accordance with the terms of the Plan for purposes of determining eligibility for certain benefits and eligibility for a vested Pension", any ambiguity must be construed against the drafter of the Plan, and must be construed in accordance with the reasonable expectation of the Plan beneficiaries, *Wheeler v. Dynamic Engineering, Inc.,* 62 F.3d 634, 638 (4th Cir. 1995); *Bynum v. Cigna Healthcare of North Carolina*, 287 F.3d 305 (4th Cir. 2002).

**B.     The 2005 Freeze Amendment Violated ERISA's Anti-cutback Rule, as did the 2004 Amendment**

Like the 2004 amendment by the Committee, the 2005 freeze amendment deleted action 4.12(a) of the Plan, which was held by this Court to be a violation of the ERISA anti-cutback Rule.

### 1.    This Case is Distinguishable from *Cinotto*.

In its Order, the District Court held that "*Cinotto* is distinguishable from the case at hand [because] [t]he Eleventh Circuit's result was largely driven by Delta's pension plan's definition of 'accrued benefit' which is diametrically opposed to the Plan definition currently before the Court." ( JA-1501) The Court was "correct" in its analysis because not only was section 1.13 of the Plan a distinguishing factor in the cases, but also the District Court found that "the pension plan's definition of "accrued benefit," distinguished the cases which stated that "[n]o participant shall have an accrued benefit based on future or projected service." Here the WSMS amendment of "Notwithstanding anything to the contrary in this Plan, a Member's Accrued Benefit shall be 'frozen' as of December 31, 2005 and shall not increase thereafter" does not make the case "on all fours" with *Cinotto v. Delta Air Lines, Inc.*, 674 F.3d 1285 (11th Cir. 2012). It is not at all comparable to *Cinotto's* definition that "an accrued benefit [cannot be] based on future or projected service." The accrued benefit definition here in 2005 was set at $700 per month, and did not increase thereafter, and was not based on future or projected service. In *Cinotto*, moreover, "Cinotto had not yet accrued a right to a more favorable offset" and the "future increases [were] not presently accrued benefits", as they are here. So the District Court correctly determined that *Cinotto* is distinguishable from the case at hand.

28

*Campbell v. Bankboston, N.A.*, 327 F.3d 1 (1ˢᵗ Cir. 2003) is of no help to URS. In *Campbell*, the Plaintiff contended that at the time his position at BankBoston was terminated, he was owed severance pay under the Severance Pay Plan and challenged the denial of severance plan benefits under 29 U.S.C. § 1132(a)(1)(B), which creates an action for plan participants or beneficiaries to recover benefits due. The 1ˢᵗ Circuit held that "A severance plan is defined as a "welfare benefit plan," ..., and as such, severance plans are exempted from the vesting and funding sections of ERISA, .... Thus, employers may amend or eliminate a severance pay plan at any time." (Citations omitted). Here we are not dealing with a severance pay plan at all. Rather here is the elimination of early retirement supplements which as of January 1, 2005 was fully accrued at the level of $700 per month. This Court on appeal determined that the benefits of $700 per month were accrued for Mr. Savani as of April 30ᵗʰ, 2005 (and others by logical implication) because the clear terms of the Plan made the supplemental benefits part of the calculation of accrued benefits. *Savani, supra at 312.*

2.    **The 2005 Freeze Amendment Violated ERISA's Anti-cutback Rule**

While the Board of Directors prior to January 1, 2005 could freeze supplemental benefits at the monthly level then in effect[10], after January 1, 2005 the Board of Directors could not reduce, eliminate, or calculate the supplemental benefits for anyone other than at the accrued level of $700 per month. This is clearly shown in the Senate Report addressing the amendment to the Anti-Cut Back Rule[11]. The purpose for the amendment was set forth as follows:

> Reasons for Change.
> The committee believes that the protection of accrued benefits, which are essentially retirement benefits, against reduction by plan amendments is an essential safeguard for plan participants and their beneficiaries. The committee also believes that valuable rights of the participants should not be lost through the elimination of benefit options because options of equal actuarial value may not be of equal value to people whose particular circumstances are not taken into account in determining actuarial equivalence. S. Rep. No. 98-575, 98th Cong., 2d Sess., at 27 (1984), reprinted in 1984 U.S.C.C.A.N. 2547, 2573. The scope of section 204(g) was described in the following manner: ...If the protection is afforded, **an employee's accrued benefit is not to be less than the protected level or the accrued benefit determined under the plan without regard to the protection, whichever is greater. For example, if a plan** is amended **to eliminate a subsidized early retirement benefit** for employees who have completed 30 years of service, then the plan would not be required to provide the subsidy to an employee who **never completes 30 years of service** and it would not be

---

[10] $525 per month for 1998, increasing $25 each year until January 1, 2005 when the Plan specifically stated $700 per month "January 1, 2005 and Thereafter".

[11] See Retirement Equity Act ("REA"), Pub. L. No. 98-397.

required to provide benefits to such an employee before the normal retirement age. **On the other hand, if the employee completes 30 years of service, then the employee's accrued benefit is not to be less than the protected level or the accrued benefit determined without regard to the protection, whichever is greater**. *Id*. at 28, reprinted in 1984 U.S.C.C.A.N. 2547, 2574. (Emphasis added).

Here on the effective date of the Freeze amendment, § 4.12 benefits were attributable to one year or more service at WSMS and the level of § 4.12 (a) benefits was $700 per month. Thus, members of the Subclass' level of benefit cannot "be less than the protected level" of $700 per month in existence prior to the freeze amendment. The early retirement supplement hence was a retirement benefit that is protected. The WSMS Defendants violated the Anti-cutback Rule when they eliminated it. This Fourth Circuit stated "Here, however, the Plan plainly incorporated both supplements into its definition of "accrued benefit." *Savani supra at 316*. Accordingly, to the extent that the Freeze amendment by the WSMS Board eliminated, prohibited qualifying for, or reduced § 4.12(a) supplemental benefits, it violated ERISA; and therefore is void.

URS maintains that there "is nothing unfair about telling participants that they can get everything they have earned up to particular point in time, but continuing to work for that employer, which they are not required do, will not result in further increase in pension benefits."[Opening Brief p. 31, Doc.12 at 42]. That simply not comparable to our case. WSMS and its corporate parent WGI promised transferees

31

from WSRC that if they transferred to WSMS they would be entitled to the supplements. It is grossly unfair to induce employees to leave their pension benefits at WSRC and to accept the WSMS pension with the "Special Pension Benefits" only "Available to WSRC Transferees" (JA 705) which promised the supplemental early retirement payments after one year of service at WSMS; and then seven years later surreptitiously do away with those supplemental early retirement benefits!

## IV.   THE CASES STATING THAT THE PLAINTIFF AND SUBCLASS CAN "GROW INTO" THE $700 EARLY RETIREMENT SUPPLEMENT ARE DIRECTLY ON POINT AND CONTROLLING

URS, as it must, recognizes that there is not only substantial, but overwhelming case law, that supports the District Court in its decision that a plan participant can grow into an early retirement supplement by continuing to work at the employer after an amendment deleting or freezing early-retirement benefits. Every appellate court that has considered this issue has held that an employee can "grow into" the conditions for eligibility existing prior to the freeze by continuing to work for the employer.

In *Bellas v. CBS*, 221 F.3d 517 (3d Cir. 2000) the Court considered the 1984 amendment to the Anti-Cut Back Rule finding that the legislative history of the amendment to § 204(g) expressly states that the amendment was designed to 'protect' the accrual of benefits with respect to participants who have met the requirements for

32

a benefit as of the time a plan is amended **and participants who subsequently meet the preamendment requirements**. See S. Rep. No. 575, 98th Cong., 2d Sess. 28, reprinted in 1984 U.S. Code Cong. & Admin. News 2547, 2574" at P. 534. (Emphasis added). The Third Circuit held:

> After 1984, a plan sponsor could eliminate prospectively an early retirement benefit by amendment, but under section 204(g) the **amendment could not adversely affect that portion of an early retirement benefit** that already had accrued to a plan participant **who satisfied the pre-amendment conditions** for the benefit **either before or after the amendment**.  Thus, if the 1994 Westinghouse Plan amendments reduced or eliminated early retirement benefits or retirement-type subsidies, the **amendments would have had to allow employees who remained employed by CBS after the amendments to "grow into" the benefit**... **There is no question but that a standard early retirement benefit, provided exclusively upon the satisfaction of certain age and/or service requirements, is an accrued benefit that is protected by section 204(g).** See, e.g., *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1143-44 (3d Cir. 1993); see also *Ahng v. Allsteel, Inc.*, 96 F.3d 1033, 1034 (7th Cir. 1996); *Richardson v. Pension Plan of Bethlehem Steel*, 67 F.3d 1462, 1467-68 (9th Cir. 1995); *Constantino v. TRW, Inc.*, 13 F.3d 969, 977 (6th Cir. 1994); *Hunger v. AB*, 12 F.3d 118, 120 (8th Cir. 1993); *Harms v. Cavenham Forest Indus., Inc.*, 984 F.2d 686, 692 (5th Cir. 1993); *Aldridge v. Lily-Tulip, Inc., Salary Retirement Plan Benefits Comm.*, 953 F.2d 587, 590 (11th Cir. 1992). p. 524.... Accordingly, for purposes of the anti-cutback provisions of ERISA, **such benefits are protected by section 204(g) with respect to employees within the pension plan after their creation and not upon the occurrence of the contingent event**. P. 536 (Emphasis added).

In *Hunger v. AB*, 12 F.3d 118 (8th Cir. 1993) the Eight Circuit stated:

> Thus, section 204(g) extends to all participants **the right to "grow into" a benefit subsidy by satisfying the plan's preamendment**

**eligibility requirements following the amendment to the plan.** This limited benefit protection for retirement subsidies finds support in the legislative history of section 204(g): **The bill generally protects the accrual of benefits** with respect to participants who have met the requirements for a benefit as of the time the plan is amended **and participants who subsequently meet the preamendment requirements.** (Emphasis added).

In *Ahng v. Allsteel, Incorporated*, 96 F.3d 1033 (7th Cir. 1996) the Seventh Circuit held:

> **The courts of appeals that have ruled on an employee's right to "grow into" early retirement benefits have followed this reasoning and have uniformly held that as long as an employee satisfies, or will be able to satisfy, the eligibility requirements of the early retirement benefit in effect prior to the amendment, sec. 204(g) protects the benefit.** See, e.g., *Hunger*, 12 F.3d at 120; *Gillis*, 4 F.3d at 1143-46; *Harms*, 984 F.2d at 692. In the face of this overwhelming authority, it was not surprising that Allsteel's counsel conceded at oral argument that Meredith's analysis of sec. 204(g) was no longer sustainable. We agree. We find the statutory language plain and the position of our sister circuits persuasive, and **we therefore hold that employees like the Ahng plaintiffs here who complain about a cut-back of early retirement benefits have stated a claim under sec. 204(g), as long as each employee satisfies (either before or after the plan amendment) the relevant eligibility requirements in place at the time of the amendment**. At pp. 1036-7 (Emphasis added).

Accord, *Arndt v. Security Bk. SSB. Emp. Pension Plan*, 182 F.3d 538 (7th Cir. 1999).

District Courts have followed. *Arena v. ABB Power T & D Company Inc.,* 2003 WL 21766560, No. IP 99-0391-C-M/S (S.D. Ind. 2003) considered an amendment of the pension plan to eliminate Plaintiffs' early retirement benefits. The Court held "it is well-settled that a plan amendment that cuts early retirement benefits or retirement-type

34

subsidies attributable to service before the amendment violates the plain language of § 204(g). The retirement benefits are protected even if they are conditioned on age and service requirements, as long as the plan participant satisfies those pre-amendment requirements. ...  Even if plan participants have not satisfied the plan conditions at the time of the amendment, they must be given the opportunity to "grow into" their early retirement benefits by satisfying the conditions after the amendment. *See Ahng*, 96 F.3d at 1036; 29 U.S.C. § 1054(g)(2)." Also, in *Abels v. Titan Intern., Inc.*, 85 F. Supp. 2d 924 (S.D. Iowa 2000), a case very similar to ours, the Court considered a case following a 1993 Freeze Amendment. In 1995 Plaintiff Glenn Carlton had then achieved 30 years of service with his employer Titan and applied for early retirement benefits under the "30 and out" retirement plan provision. Like WSMS, Titan denied Carlton's request because, as Titan interpreted the 1993 Freeze Amendment, he did not have 30 years of service as of July 12, 1993. Under these facts, the Court held that "until Titan properly amends the Plan consistent with the strictures of ERISA, the Court orders that all Plaintiffs be credited with their years of service subsequent to July 12, 1993 so that such Plaintiffs can properly satisfy (and "grow into") the requirements of either the 30-and-out or the 85-points plan (and any corresponding supplemental benefit provisions)." at p. 939. Likewise here, the District Court held that Taylor and

the Subclass Plaintiffs can properly satisfy (and "grow into") the requirements for

supplemental benefits under the WSMS Plan by continuing to work for WSMS/URS.

## V.    § 10.01 OF THE PLAN PROHIBITS THE BOARD FROM ELIMINATING THE § 4.12 (a) SUPPLEMENT

The Plan in § 10.01 prohibits amendments that delete or reduce <u>directly or</u>

<u>indirectly</u> a benefit option or accrued benefit as follows:

10.01  Amendment of Plan

> **The Board of Directors**, ...reserves the right...to amend in whole or in part any or all of the provisions of the Plan...
> However, ....  **No amendment shall be made which has the effect of decreasing either** *directly or indirectly* **the Accrued Benefits** of any Member, **of eliminating any benefit option**, **or** of reducing the nonforfeitable percentage of **the Accrued Benefit of a Member computed under the Plan** as in effect on the date on which the amendment is adopted or, if later, the date on which the amendment becomes effective.... (Emphasis added).

On the prior appeal this Circuit stated "Here, however, the Plan plainly

incorporated both supplements into its definition of "accrued benefit." *Savani supra*

*at 316.* Conflicting with this clear mandate from the Fourth Circuit, URS incredibly

maintains that the Freeze of the Plan could put conditions on § 4.12 accrued

supplements of the Plan. So the portion of the Freeze amendment by the WSMS Board

curtailing § 4.12(a) accrued supplemental benefits violated § 10.01 of the Plan; and is

void.

36

**VI.    THE DISTRICT COURT PROPERLY ADOPTED THIS COURT'S DECISION - TERMINATING EARLY RETIREMENT BENEFITS VIOLATES THE ANTI-CUT BACK RULE - 29 U.S.C. § 1054(g)**

29 U.S.C. § 1054(g) provides:
Decrease of accrued benefits through amendment of plan (1) **The accrued benefit** of a participant **under a plan may not be decreased by an amendment** of the Plan, ....  (2) For purposes of paragraph (1), a plan amendment which has the effect of —— (A) **eliminating or reducing an early retirement benefit** or a retirement-type subsidy (as defined in regulations), or (B) **eliminating an optional form of benefit**, with respect to **benefits attributable to service** before the amendment **shall be treated as reducing accrued benefits**....(Emphasis added).

This Court of Appeals on the prior appeal held:

ERISA's anti-cutback statute provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ." 29 U.S.C. § 1054(g)(1) (2010).... Plan § 1.01 defines "accrued benefit" as the "normal retirement Pension . . . less the WSRC offset . . . plus any applicable supplements as described in § 4.12 . . . ." Simply put, prior to the Plan's amendment, a beneficiary's accrued benefit was calculated by an equation; the accrued benefit equaled the retiree's pension, less a defined offset, plus applicable § 4.12 supplements. (Footnotes deleted). *Savani, supra at 315.*

Here on the effective date of the Freeze amendment, § 4.12 benefits were

attributable to one year or more service at WSMS and § 4.12 (a) accrued benefits level

was $700 per month. Thus, the Subclass' level of benefit cannot "be less than the

protected level" of $700 per month in existence prior to the Freeze amendment[12]. The

---

[12] URS claims that "The District Court also apparently misunderstood the effect of the Freeze Amendment. Specifically, the District Court stated that it is "undisputed that the § 4.12(a) monthly supplemental benefit amount was set at $700 at the time of the

early retirement supplement was clearly a retirement benefit that is protected by
ERISA's anti-cutback statute. To avoid this obvious result, URS tries to relate this case
back prior to the appeal when the District Court was reversed. URS claims that portions
of the prior reversed decision "remains the law of the case". [Opening Brief p. 42,
Doc.12 at 53].   URS further maintains that "As a type of 'ancillary benefit,' by
definition, the $700 Supplement cannot meet the regulatory definition of an "early
retirement benefit" in 26 C.F.R. § 1.411(d)-3(g)(6)(I.)"; but here the definition in the
Plan of "Accrued benefits" in § 1.01 made the § 4.12(a) benefits *accrued* and
guaranteed. URS admits that "Taylor and the Subclass were permitted to "grow into"
their Section 4.03 "early retirement benefit" that they had already earned as ERISA §
204(g)(2) and the cases referenced above require" [Opening Brief p. 37, Doc.12 at 48],
but ineptly tries to distinguish their earned benefits under Section 4.03 of the plan from
their equally earned supplemental early retirement benefit under section 4.12 of the
Plan. URS tries to apply this Court's holding to only one subsection of Article 4 of the
Plan when URS quibbles that "it is clear that the opinion simply referred to the $700
Supplement as an "early retirement benefit" in the *colloquial* sense, not as that term is
defined in a legal sense. *Savani*, 474 F. App'x at 315" [Opening Brief p. 41, Doc.12 at
52]. Clearly, there is no distinction. The $700 benefit described in Section 4.12(a) is

---

2005 amendment freezing future benefit accruals." (JA-1499.) That is correct."
[Opening Brief p. 40, Doc.12 at 51].

only paid upon early retirement! The beneficiaries of the Plan only understanding was that if they transferred from WSRC to WSMS, that they would be entitled the $700 Supplement as an "early retirement pension benefit". Denying the beneficiaries of the Plan their § 4.12(a) benefits because URS claims this Court referred to "early retirement benefits" in the "*colloquial* sense" and not the "*legal* sense" is nonsensical. This Court should not deal in such semantics. If URS had wanted clarification of "early retirement benefit" as used by this Court, the proper *legal* procedure would have been a motion for clarification in this Court immediately after the decision in March 2012, and not at this late date. Also, no ordinary employee/beneficiary would comprehend that early retirement supplements could have different meanings - in the *legal* sense in Court - in the *colloquial* sense out of Court. The presentation materials, which Defendants used to induced the Subclass members to transfer to WSMS, clearly represented that transferees would be entitled to the early retirement supplemental benefits.

Furthermore, given that a prior judge determined § 4.12(a) was an "ancillary benefit" does not make his reversed decision the law of this case. Rather the law of this case is while "[s]tandalone, ancillary welfare benefits generally are not independently protected by ERISA (citations omitted) [h]ere, however, the Plan plainly incorporated both supplements into its definition of 'accrued benefit.' Regardless of their

39

classification as accrued or ancillary, welfare or pension benefits, the supplements' inclusion in the plain terms of the Plan's accrued benefit calculation necessarily meant that any change to the amount or existence of a § 4.12 supplement constituted a change to an 'accrued benefit.'" 474 Fed. Appx. at 316. The § 4.12(a) supplements are "early retirement supplements" subject to protection of the Anti-cut Back Rule - 29 U.S.C. § 1054(g), in both the *colloquial* and the *legal* sense. The portion(s) of the Freeze Amendment eliminating, conditioning, or curtailing § 4.12(a) violated ERISA's anti-cutback rule.  Therefore, unlike *Cinotto*, this Subclass of participants are entitled to receive the § 4.12(a) $700 Supplement.

In summary, Judge Childs was correct in ruling the § 4.12(a) $700 supplement was an early retirement benefit based on the law of this case.

## VII.  THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION WHEN IT DECLINED TO REMAND THE FREEZE ISSUE TO THE COMMITTEE

The District Court did not interpret the Freeze Amendment amending Section 1.13 of the Plan regarding a participant's ability to continue to earn "Eligibility Service". The District Court considered all of Defendants' arguments, and did not sidestep their legal argument that the freeze amendment was permissible under ERISA.

40

## A.    The District Court Decision

In it's July 2, 2013 order denying Defendant's motion for reconsideration, the

District Court stated:

> Defendants argue the court should remand the case to the Plan's benefits
> committee to interpret the term "certain benefits." They claim that "at the
> time Defendants adopted the 2005 Amendment in December 2005 [which
> included the section on "certain benefits"], Section 4.12(a) was not part
> of the Plan because it had been eliminated from the Plan in 2005. Thus,
> the 2005 Amendment was not drafted with any consideration of the effect
> it might have on Section 4.12(a) of the Plan." Reply at 5-6. Moreover,
> Defendants claim that the court failed to address the amendments to
> Section 1.01 of the Plan that state "[n]otwithstanding anything to the
> contrary in this Plan, a Member's Accrued Benefit shall be 'frozen' as of
> December 31, 2005 and shall not increase thereafter." Administrative
> Record at 145. As discussed below, the court did consider this issue and
> determined that Taylor could grow into this benefit. ... (JA 1719-1720)

Concerning URS's *de novo* interpretation of the Plan argument, Judge Childs stated:

> Next, the court disagrees with Defendants' assertion that the court
> interpreted "patently ambiguous" language in reaching its conclusion. The
> court drew specifically on the Fourth Circuit's analysis in reaching its
> conclusion. In their Order, the Fourth Circuit explicitly articulated that the
> $700 Monthly Supplement was an "accrued benefit" and thus the pre-
> 2004 calculation of an accrued benefit remains the same. Moreover, the
> Fourth Circuit explicitly termed the $700 benefit an "early retirement
> benefit." [Dkt. No. 181 at 11]. While Defendants argue in their Motion
> that the Fourth Circuit did not intend this meaning, that is for the Fourth
> Circuit (and not this court or Defendants) to clarify. Defendants
> themselves acknowledge and this court has ruled that a "participant may
> be able to 'grow into' an 'early retirement benefit.'" Defendants'
> Response to Summary Judgment [Dkt. No. 206 at 14]; Order on Partial
> Summary Judgment [Dkt. No. 228 at 4]. Moreover, the Plan itself
> provides that "[t]he early retirement Pension shall be a deferred Pension
> beginning on the first day following the Member's Normal Retirement

Date and … shall be equal to his Accrued Benefit." Therefore, the court properly determined that Taylor was entitled to the $700 Monthly Supplement as an accrued benefit under the "terms of the plan." Taylor may appropriately grow into this benefit based on the Fourth Circuit's articulation of it as an early retirement benefit. (JA 1713-1722)

## B.     Failure to Remand is not Error

URS in direct contravention of the record and Judge Childs' Order to the contrary, maintains that the District Court determined that the Subclass was entitled to the $700 Supplement based upon the Court's *de novo* interpretation of the language contained in the 2005 Amendment regarding a participant's ability to continue to earn "Eligibility Service." [Opening Brief p. 45, Doc. 12 at 56]. The sole basis for remand is that the District Court's Order hinged on *a de novo* interpretation of the language of the 2005 Amendment to the Plan. As shown above, this contention does not have support. While the plan vests discretionary authority in the plan administrator to interpret a plan's terms, the district court did not act as a "substitute trustee" and interpret the plan *de novo*. So *Conkright v. Frommert*, 559 U.S. 506, 515 (2010) is irrelevant. Rather, the District Courts's decision was based on the Fourth Circuit's decision invalidating the elimination of the $700 early retirement supplement.

Moreover, any "interpretation" by the Committee of § 1.13 to delete eligibility for the Subclass under § 4.12(a) would be an inconsistent (and not uniform) interpretation of the Plan concerning Eligibility for Supplemental benefits under Article

4 of the Plan. Article 4 includes eligibility for normal retirement under § 4.01 (JA 256),

post 65 retirement under § 4.02 (JA 257), Early retirement under § 4.03 (JA 259),

Optional retirement under § 4.04 (JA 260), Incapacity retirement under § 4.06 (JA

262), Survivor benefits under § 4.08 (JA 268), and Spousal benefits under § 4.09 (JA

270). Interpreting § 4.12(a) to not qualify for beneficiaries to age or grow into would

be an inconsistent interpretation with the other foregoing sections; and would be an

abuse of discretion by the Committee. As stated by this Court: "However, ignoring the

plain language of the Plan's terms was not within the committee's discretion....The

committee did not have discretion to read out [] unambiguous provision of the Plan,

and therefore abused its discretion ...." *Savani, supra at 315-316.*

Also, *Daft v. Advest, Inc.*, 658 F.3d 583, 596 (6th Cir. 2011) does not mandate

remand. In *Daft*, the district court considered an ERISA case without first having a full

administrative record. On appeal the court stated "....Remand ... is appropriate in a

variety of circumstances, particularly where the plan administrator's decision suffers

from a procedural defect or the administrative record is factually incomplete." That is

not the circumstances present here.  Mr. Savani, for himself and the members of the

Plan, in the administrative claim challenged the 2005 Freeze amendments of the Board

as they related to § 4.12(a) benefits. (JA 209, AR 4, ¶11& ¶15; JA 214, AR. 9, ¶ 23 &

¶ 26).  Here, unlike *Daft*, there are not the "many factual gaps in the administrative

43

record that need filling in order to allow a reasoned determination of the...issue...." *Id*. at 595-596. Rather the record is sufficiently complete to determine the effect of the Freeze amendment on the status of Robert Taylor and members of the Subclass.

Likewise, *Saffle v. Sierra Pacific Power Company Bargaining Unit Long-Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996), and other cases cited, do not compel remand because as stated there "An ERISA plan administrator abuses its discretion if it construes provisions of the plan in a way that "conflicts with the plain language of the plan." Here the "interpretation" Defendants so desire would conflict with the plain language of the Plan which includes becoming eligible to receive the accrued § 4.12(a) supplemental benefits, and other Article 4 benefits.

**C.    The Supreme Court's Decisions are Irrelevant Because Any Other "interpretation" by the Plan Administrator Would Violate ERISA's Anti-cutback Rule and Would Hinder Efficiency, Predictability and Uniformity**

While the Supreme Court has recognized that ERISA represents a "careful balancing" between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans, *Conkright*, 559 U.S. *supra* at 517 (citations omitted), allowing the interpretation of the Plan by the Committee in a manner that contravenes the decision of the Fourth Circuit in this case would result in the anomaly that the Class members will have been paid their early retirement supplemental benefits; and yet, the Subclass (who like the Class members transferred

44

to WSMS based upon promises that they would receive the supplements upon early retirement) would be denied receiving those exact payments. This would hinder (and not promote) efficiency, predictability and, uniformity in the application of ERISA, frustrating its goals; and result in non uniform treatment of Article 4 Plan benefits.

### D.    Remand is NOT Appropriate - the Plan Administrator Has Had Occasion To Interpret the Freeze Amendment

The Plan Administrator has had occasion to interpret the Freeze Amendment. Specifically challenged during the Savani claim was the Freeze amendment attached as "Exhibit F" to the Savani Claim.  (JA 357, AR 145).  The Committee then rendered an administrative opinion denying the claim (JA 946-952, AR 704-710) with a record which included the 2005 amendment, (JA 923-944, AR 682-703), the Freeze of Accrued Benefits § 1.01 (JA923 , AR682), the amendment to Eligibility § 1.13 (JA 924, AR 683) and the deletion of § 4.12(a) supplemental benefits (JA 964, AR 721). In this circumstance here, *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir. 1998) cited by URS is not controlling or even instructive. An ERISA claimant may bring a lawsuit under 29 U.S.C. § 1132(a)(1)(B) "to  recover benefits due to him under the terms of his plan." (citing ) ... when the plan has no meaningful existence apart from the employer, and when the employer made the decision to deny benefits. *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349-50 (5th Cir. 2003)." Here

45

URS through their attorneys decided to deny benefits to the Subclass[13] (JA 1322). *Lifecare Mgmt. Services v. Insurance Mgmt. Adm'rs*, 703 F.3d 835 (5th Cir. 2013). Likewise here, the WSMS board decided to do away with § 4.12(a) when it confirmed the elimination of § 4.12(a) by the Committee in the Freeze amendment effective December 31, 2005.

Also, *Pakovich v. Broadspire*, 535 F.3d 601 (7th Cir. 2008) does not require remand because a decision on the claim for benefits that is now before the courts was considered in the claim of Mr. Savani, and the issue was fully developed on cross motions for summary judgement.

### E.    Remand Would Be Futile

Here remand would be futile because the Committee must have considered the 2005 Freeze amendments of the Board, as they related to § 4.12(a) benefits (JA. 214, AR 9, ¶¶ 23 & 26); and on the Savani claim determined that a "participant <u>does not earn the $700 Monthly Supplement until he or she actually retires</u> on his or her early retirement date. Only until an eligible participant <u>satisfies the requisite age and service</u>

---

[13] The Defendants believe that there is one remaining legal issue to be resolved by cross-motions for summary judgment. Specifically, the Plan was amended to "freeze" benefits as of December 31, 2005. The Parties disagree as to whether this amendment could affect the supplemental benefits provided by the Plan which were determined by the Fourth Circuit as being accrued benefits under the Plan. Defendants suggest that cross-motions for summary judgment may be necessary regarding how the Plan's "freeze" affected the supplemental benefits provided by the Plan. (JA 1322).

and then elects early retirement would the participant be entitled to the $700 Monthly Supplement...." (JA 948, Emphasis added). Clearly, it would be futile to repeat the process for Mr. Taylor.

### F.    URS Waived Remand

Moreover, the Defendants induced Taylor to be added as a Plaintiff and suggested as the proper procedure to file cross motions for summary judgment to resolve the freeze issue. (JA 1322). By advancing the proper procedure of cross motions for summary judgment, Defendants waived any requirement of pursuing the administrative procedure. (JA 1322). *McCoy v. Bd. of Trustees of Baboree Int'l Union*, 188 F. Supp. 2d 461, 467 (D. N.J. 2002) ("Failure to exhaust administrative remedies is generally an affirmative defense subject to waiver."), *aff'd*, 60 Fed. Appx. 396 (3d Cir. March 25, 2003).

## VIII.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY NOT REQUIRING TAYLOR TO EXHAUST HIS ADMINISTRATIVE REMEDIES

Generally Defendants are correct that the exhaustion of administrative remedies is required before a plaintiff can sue under ERISA citing *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990), *cert. denied*, 499 U.S. 920 (1991). However, in the context of an ERISA class action, only the named plaintiff must exhaust administrative remedies. See Frank Cummings, ERISA Litigation: An Overview of

47

Major Claims and Defenses, SF76 ALI-ABA 353, 521 (Jan. 18, 2001). The issues arising from the Freeze Amendment were relevant to Savani who challenged the Board's Freeze amendment as a violation of ERISA. In spite of a futility argument, and arguing that the 2004 and 2005 amendments violated the anti-kickback rule of ERISA, the Committee denied the claims. Moreover, "courts have recognized an exception when resort to the administrative process would be futile." *Berger*, 911 F.2d at 916. Concerning requiring Taylor to exhaust administrative remedies, the District Court held:

> Defendants also argue that remand is required because Plaintiff Taylor failed to exhaust his administrative remedies. This argument fails for reasons that Defendants themselves articulated. In their Response to Plaintiffs' Motion for Partial Summary Judgment, Defendants stated in a footnote1 "to the extent that the Court finds any ambiguity in the language of the 2005 Amendment, Plaintiff Taylor would need to file a claim under the terms of the Plan, and exhaust his administrative remedies, before litigating this issue." Response at 24 [Dkt. No. 206]. As explicitly set out in the court's Order on Summary Judgment, the court found no ambiguity in the terms of the Plan, as amended in 2005. Moreover, to the extent that Defendants are now trying to raise a broader administrative exhaustion argument, they have waived such by not raising the argument previously – indeed, Defendants did not even broach the exhaustion argument at the lengthy hearing that the court held on the cross-motions for summary judgment. See *Cross v. Fleet Reserve Ass'n Pension Plan*, 2007 WL 7022754 (D. Md. Jul. 3, 2007) (overruled on other grounds by *Cross v. Bragg*, 329 Fed. App'x. 443 (4th Cir. 2009)); see also *Zipes v. TransWorld Airlines, Inc*., 455 U.S. 385, 393 (1982). While the court declines to adopt Plaintiff's view that Defendants made this motion in bad faith, the appropriate time to have requested remand would have been immediately after the Fourth Circuit's opinion, when Defendants acknowledged they were aware of this issue. Waiting

48

until more than a year after that opinion and until after Defendants have received an adverse ruling from this court does not warrant this court's use of its discretion to remand to the Plan's benefits committee. (JA 1720-1721).

It is well recognized that an ERISA claimant's failure to exhaust administrative remedies is an affirmative defense, subject to equitable considerations, such as estoppel and waiver. *Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 445, 447 (2d Cir. 2006). Given the Defendants' apparent uniform interpretation of the plan documents against the claims in this case, requiring Taylor, as a subclass representative (who is also a member of the main class) to exhaust his administrative remedies would be futile. See *Bunnion v. Consolidated Rail Corp.*, No. Civ. A. 97-4877, 1998 WL 372644, at *3 (E.D. Pa. May 14, 1998) at 7-8.  Here the District Court properly exercised its discretion.

## IX.   ALTERNATIVE EQUITABLE RELIEF

This case resembles *Varity Corp. v. Howe*, 516 U.S. 489, 116 S. Ct. 1065 (1996). In *Varity*, Varity Corporation held a meeting to persuade employees to change employers and benefit plans. The Plan administrator, as well as the employer, conveyed the basic message that employees' benefits would remain secure when they transferred. The District Court found, and the Supreme Court affirmed, that both the Plan administrator and the employer were ERISA fiduciaries, and had violated ERISA

49

§§ 404(a)'s fiduciary obligation to administer the Plan "solely in the interest of the [plan's] participants and beneficiaries".

Here WSMS breached its fiduciary duty when it misled Sam Savani, Terrance Voss, Robert Taylor and members of the Subclass concerning the permanency of Supplemental Benefits. *Varity Corp. v. Howe*, 516 U.S. at 492, 116 S. Ct. 1065 (1996); *Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 546 (7th Cir. 1997); *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993). *Beach v. Commonwealth Edison Co.*, 388 F.3d 1133 (7th Cir. 2004). It was fraud with respect to pension and welfare benefits to state to WSRC transferees that they would get Supplemental Benefits and then after years of work at WSMS to take them away. *See Beach v. Commonwealth Edison Co.*, 382 F.3d 656 (7th Cir. 2004); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). In the event that this Court does not agree that Robert Taylor and the Subclass are entitled under ERISA § 502(a)(1)(B) to the supplemental benefits, then this Court must consider granting alternative equitable relief under ERISA 502(a)(3) - either under breach of fiduciary duty and/or under promissory estoppel. The Supreme Court in *Cigna Corporation v. Amara*, 563 U.S. ___, 131 S. Ct. 1866 (2011) held:

> If §§ 502(a)(1)(B) does not authorize entry of the relief here at issue, what about nearby §§ 502(a)(3)? That provision allows a participant, beneficiary, or fiduciary "to obtain other *appropriate equitable relief*" to redress violations of (here relevant) parts of ERISA "or the terms of the

plan." 29 U.S.C. §§ 1132(a)(3) (emphasis added). The District Court strongly implied, but did not directly hold, that it would base its relief upon this subsection were it not for (1) the fact that the preceding "plan benefits due" provision, §§ 502(a)(1)(B), provided sufficient authority; and (2) certain cases from this Court that narrowed the application of the term "appropriate equitable relief," .... Our holding ... removes the District Court's first obstacle. And .... We find ...[the Second] concern misplaced.... 563 U.S. at ___, slip op. at 16.

Since Taylor and the Subclass were promised the Supplemental Benefits, and have been damaged[14] based on a misrepresentation that they would become entitled to the early retirement supplement if they transferred from WSRC to WSMS (Taylor Affidavit JA 1341-42) (JA 979, A. R. 735), URS should be estopped from asserting that Taylor and Subclass are not entitled to their Supplemental Benefits. *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010); *Eastes v. Verizon Communications*, 2005 WL 483369, Civil Action No. 2:01-0763 (S.D. W. Va. Joseph Goodwin, District Judge, March 1, 2005). The URS Defendants are therefore alternatively liable for breach of fiduciary duties and should be estopped from denying Plaintiffs' claims.

---

[14] *Cigna, supra* held that Taylor and Subclass do not need to show detrimental reliance for their claim: "We believe that, to obtain relief ...a plan participant ...must show that the violation injured him or her. But to do so, he or she need only show harm and causation." *Id.* at 21-22.

51

## CONCLUSION

The early retirement supplement was clearly a retirement benefit that is protected.

The WSMS Defendants violated the Anti-cutback Rule when they eliminated it with the Freeze amendment. Even after the Freeze amendment, the clear Plan terms make the Supplemental benefits payable at the level then in effect, and gave the Plaintiff and Subclass the right to continue to "earn eligibility" for those benefits.

Robert Taylor, like Sam Savani, was promised the same early retirement supplements which came into existence as a legally enforceable claim when they in 1997 transferred from WSRC to WSMS. The Board of Directors' Freeze should not, and cannot under law and equity, prevent Robert Taylor and members of the Subclass from "growing into" and becoming eligible for the § 4.12(a) supplemental benefit. Robert Taylor satisfied the age and service requirements for early retirement on April 29th 2006, shortly after the Freeze. He is receiving and did satisfy the requirements for early retirement under Article 4 (§ 4.03) of the Plan - and is receiving a WSMS pension. (JA 1341-42). Ergo, under § 4.12(a) (which is a part of Article 4 of the Plan) Robert P. Taylor, Jr. also "satisfies the requirements for a Pension under this Plan" and is entitled to the § 4.12(a) early retirement supplement. As a matter of law and equity,

Taylor and Subclass are entitled to having this Court affirm the District Count's decision.

This 24th day of March, 2014.

s/Stanley G. Jackson
STANLEY G. JACKSON(#9077)
Attorney for the Plaintiffs-Appellees
321 ½ Newberry Street, SW
Aiken, South Carolina 29801
(803) 643-1003

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>13,086</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>WordPerfect</u> in <u>14 point Times New Roman</u>.

    /s/ Stanley G. Jackson
    Stanley G. Jackson

Dated: March 24, 2014

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on March 24, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Emily S. Costin
H. Douglas Hinson
ALSTON & BIRD, LLP
The Atlantic Building
950 F Street, NW, Suite 1
Washington, DC  20004
emily.costin@alston.com
doug.hinson@alston.com

Gray T. Culbreath
GALLIVAN, WHITE & BOYD, PA
1201 Main Street
P.O. Box 7368
Columbia, SC  29202
gculbreath@gwblawfirm.com

*Counsel for Appellants*

s/Stanley G. Jackson
STANLEY G. JACKSON(#9077)
Attorney for the Plaintiffs-Appellees
321 ½ Newberry Street, SW
Aiken, South Carolina 29801
(803) 643-1003